UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

RETURN DATE:     APRIL 21, 2014
TIME:     9:30 A.M.

-----------------------------------------------------------X

In Re:

Katya Varela a/k/a Katya D. Varela a/k/a
Katia D. Varela,

       Debtor.

-----------------------------------------------------------X

Chapter 7

Case No. 813-73019-A736

Marc A. Pergament, Chapter 7 Trustee of the
Estate of Katya Varela a/k/a Katya D. Varela
a/k/a Katia D. Varela,

       Plaintiff,

    -against-

Katya Varela,

       Defendant.

-----------------------------------------------------------X

Adv. Pro. No. 813-08146-A736

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS EACH OF THE COUNTERCLAIMS INTERPOSED IN DEFENDANT'S SECOND AMENDED ANSWER WITH COUNTERCLAIMS PURSUANT TO RULES 12(b)(6) AND 9(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE ("FRCP") AND TO STRIKE EACH OF THE AFFIRMATIVE DEFENSES IN DEFENDANT'S SECOND AMENDED ANSWER WITH COUNTERCLAIMS PURSUANT TO FRCP 12(f)

### PRELIMINARY STATEMENT

Marc A. Pergament, Chapter 7 Trustee of the Estate of Katya Varela ("Plaintiff" or "Trustee"), respectfully submits this Memorandum of Law in support of his motion for Order: (a) pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure ("FRCP"), as made applicable to this adversary proceeding by Rules 7012 and 7009 of the Federal Rules of Bankruptcy Procedure ("FRBP"), respectively, dismissing each of the Counterclaims interposed in Defendant's

Second Amended Answer with Counterclaims ("Amended Answer") filed on behalf of Katya Varela ("Debtor" or "Defendant"); (b) pursuant to FRCP 12(f), as made applicable to this adversary proceeding by FRBP 7012, striking each of the Affirmative Defenses interposed in the Amended Answer; and (c) such other and further relief as this Court deems just and proper.

For the reasons set forth herein, each of Defendant's Counterclaims should be dismissed as a matter of law because they fail to state a claim upon which relief can be granted. Additionally, each of the Defendant's Affirmative Defenses should be stricken because they are not appropriate affirmative defenses to the allegations set forth in the Complaint.

## BACKGROUND

On June 5, 2013 ("Petition Date"), the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

On July 10, 2013, the Trustee examined the Defendant at her initial 341 meeting pursuant to 11 U.S.C. § 341 ("341 Meeting"). After being sworn in, the Defendant testified that her signature was affixed to her bankruptcy petition and that all of the information stated in her petition and schedules was correct and that she did not want to make any changes. (*See* Ex. A[1], ¶¶ 9-10.)

The Defendant also testified that she was the sole owner of the real property located at 506 Froehlich Place, Elmont, New York ("Premises"), which was encumbered by a mortgage held by Wells Fargo, the first mortgagee. The Defendant further testified that she was approximately four (4) years in arrears on her mortgage. The Debtor also testified that she was attempting to negotiate a mortgage modification with Wells Fargo. (*See* Ex. A, ¶¶ 25, 26, 27.)

During the 341 Meeting, the Trustee questioned the Defendant with respect to her Schedule J, which reflected an average monthly income in the sum of $2,999.00, average

---

[1] The exhibits referred to herein are annexed to the Declaration of Nicholas Tuffarelli. Esq. dated March 27, 2014.

2

monthly expenses in the sum of $1,393.00 and monthly disposable income in the sum of $1,606.00. (*See* Ex. A, ¶¶ 11, 12, 21.)

Believing that it would be unfair to the Defendant's creditors to permit the Defendant to retain $1,606.00 in monthly disposable income, which the Defendant generated because she was not paying her mortgage (while continuing to use and occupy the Premises to the detriment of the Estate), the Trustee requested that the Defendant pay her monthly disposable income to the Estate for the benefit of her Estate's unsecured creditors.

After the Trustee made this request, the Defendant contradicted her prior sworn testimony by testifying that her listed monthly net income in the sum of $1,606.00 was inaccurate. When pressed by the Trustee, the Defendant admitted that that her schedules failed to include all of her expenses. (*See* Ex. A, ¶¶ 14, 15.)

Following the 341 Meeting, the Defendant filed an Amended Schedule J in attempt to correct the significant errors, inaccuracies and omissions to her original Schedule J. The Amended Schedule J included additional expenses and increased the amounts of numerous previously stated expenses. In all, ten (10) expenses were affected by the amendment. For example, the Defendant increased her: (1) electricity and heating fuel expense by 272%, from $200.00 to $774.00; (2) water and sewer expense by 140%, from $25.00 to $60.00; (3) telephone expense by 555%, from $37.00 to $242.26; (4) cable, internet, home phone expense from $0.00 to $140.00; (5) food expense by 67%, from $300.00 to $500.00; (6) transportation expense by 100%, from $100.00 to $200.00; (7) homeowner's insurance expense from $0.00 to $225.00; and (8) landscaper expense from $0.00 to $70.00. (*See* Ex. A, ¶¶ 35-38.)

Following the Trustee's investigation into the Defendant's pre-petition financial circumstances, which included an examination of the Defendant during her 341 Meeting and a

review of the Defendant's bankruptcy petition and schedules, including the numerous and substantive modifications to Defendant's Schedule J, on September 5, 2013, the Trustee commenced this adversary proceeding seeking, *inter alia,* to deny the Defendant her discharge under 11 U.S.C. § 727(a)(4)(A) ("Complaint"). (*See* Ex. A.)

On September 9, 2013, the Defendant served her Answer with Counterclaims in response to the Complaint ("Answer"). (Ex. B.) On January 6, 2014, the Trustee moved to dismiss Defendant's Counterclaims and strike her Affirmative Defenses.

On March 5, 2014, this Court held a hearing with respect to the Trustee's motion to dismiss Defendant's Counterclaims and strike her Affirmative Defenses asserted in her Answer. At the conclusion of that hearing, this Court, *inter alia,* granted the Defendant leave to file an amended answer withdrawing her Counterclaim for Civil Extortion and directed the Defendant to properly plead the counterclaims and set forth statutory or common law basis for each claim so that the Trustee would be able to frame a response.[2]

On March 7, 2014, the Defendant filed an Amended Answer with Counterclaims, On March 11, 2014, the Defendant filed a Second Amended Answer with Counterclaims ("Amended Answer") (Ex. C.). The Answer and Amended Answer are substantively similar. Any differences between the Answer and the Amended Answer relate to the Defendant's Counterclaims. The four (4) Affirmative Defenses asserted in the Amended Answer are identical to the 4 asserted in the Answer.

The Amended Answer alleges four (4) counterclaims. Similar to the Answer, the Amended Answer contains a counterclaim for tortious interference. The Amended Answer

---

[2]The Amended Answer continues to contain references to extortion. For instance, the Debtor states "[t]hat the primary purpose of the bankruptcy trustee is to balance the administration of justice and not to extort funds from poor debtors. . . ." (Ex. C, ¶ 19.) The inclusion of extortion claims directly contravenes the Court's statements at the March 5, 2014 hearing.

removes the Answer's first two counterclaims for retaliation and for extortion, but combines them into one counterclaim seeking removal pursuant to section 324 of the Bankrytcy Code. (*C.f.* Exs. B and C; *see infra*, Point IIC.)  The Amended Answer also asserts two (2) additional counterclaims for fraud and abuse of process, which were not alleged by the Defendant in the Answer.

As detailed more fully herein, because the Counterclaims in the Amended Answer either seek relief that cannot be obtained through an adversary proceeding and/or lack the necessary elements of a claim for relief, the Counterclaims should be dismissed.  Further, because the Affirmative Defenses have no bearing on the subject matter of the litigation, the Affirmative Defenses should be stricken.

## ARGUMENT

## POINT I

### EACH OF THE DEFENDANT'S COUNTERCLAIMS SHOULD BE DISMISSED BECAUSE THE TRUSTEE IS IMMUNE FOR LIABILITY

The Counterclaims essentially allege that the Trustee commenced this objection to discharge action due to the Defendant's refusal to pay the Trustee her net disposable income. However, the Trustee has immunity from liability because his decision to commence this adversary proceeding was based on the Debtor's false schedules, which falls within the scope of his statutory duties.

A bankruptcy trustee's immunity from liability has been recognized by district courts of the Second Circuit. "[A] bankruptcy trustee is a quasi-judicial official 'immune from suit for personal liability for acts taken as a matter of business judgment in acting in accordance with statutory or other duty or pursuant to court order.'" *In re Bernard L. Madoff Investment*

*Securities LLC,* 440 B.R. 282, 290 (Bankr.S.D.N.Y. 2010) (citing *In re Smith,* 400 B.R. 370, 377 (Bankr.E.D.N.Y. 2009)).

Here, the Trustee, as the representative of the Defendant's Estate, is authorized to commence and prosecute an action with or without court approval. *In re McKenzie,* 716 F.3d 404, 416 (6th Cir. 2013); 11 U.S.C. § 323 (Lexis, 2014). Further, pursuant to Section 704(a)(6), a trustee "shall, if advisable, oppose the discharge of the debtor." 11 U.S.C. § 707(a)(6) (Lexis, 2014). By objecting to the Defendant's discharge, the Trustee was acting within his official capacity and within the scope of his authority.

Sound policy considerations also favor dismissing the Defendant's Counterclaims. As detailed more fully herein, Defendant alleges that the Trustee's decision to object to her discharge was not made in good faith, but rather in "retaliation . . . for the [Defendant's] refusal to make the post-petition mortgage payments. . . . " (*See* Ex. C, ¶¶ 46, 58, 71, 80.) The Defendant in effect seeks to hold the Trustee liable for exercising his judgment when performing his statutory duties.

"A trustee should be shielded from liability for his lawful exercises of judgment and discretion, even if, in hindsight, such interpretations of law were incorrect. If immunity applied only to decisions that turned out to be proper, there would be no need for the doctrine of immunity." *Madoff,* 440 B.R. at 292.

Because liability cannot be imposed upon a trustee for exercising his judgment and objecting to the Defendant's discharge, the Defendant's Counterclaims are barred by derived quasi-judicial immunity and should be dismissed.

## POINT II

## EACH OF THE DEFENDANT'S COUNTERCLAIMS
## SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE
## A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Assuming, *arguendo*, that the Trustee does not have immunity from liability, the

Counterclaims should nevertheless be dismissed because they have not been adequately pled.

A.    Legal standards under FRCP 12(b)

Courts deciding motions to dismiss a defendant's counterclaims under FRCP

12(b)(6), as made applicable to this proceeding under FRBP 7012(b), must draw all reasonable

inferences in favor of the nonmoving party and must limit their review to facts and allegations

contained in (1) the answer, (2) documents either incorporated into the answer by reference or

attached as exhibits, and (3) matters of which the court may take judicial notice. *Blue Tree*

*Hotels Investment (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212,

217 (2d Cir. 2004). To survive a motion to dismiss, "a complaint [pleading] must set out only

enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots*

*Association, International*, 604 F.3d 703, 709 (2d Cir. 2010).

"Where a [counterclaim] pleads facts that are merely consistent with a [plaintiff's]

liability, it stops short of the line between possibility and plausibility of entitlement to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).    Plausibility "is not akin to a probability

requirement," but rather requires "more than a sheer possibility that a [party] has acted

unlawfully." *Id.*

Courts use a two-prong approach when considering a motion to dismiss. *In re the*

*1031 Tax Group, LLC*, 420 B.R. 178, 189–90 (Bankr.S.D.N.Y. 2009).    First, a court must

"assum[e] all well-pleaded, nonconclusory factual allegations in the [pleading] to be true." *See,*

*e.g., Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. at 678). Second, the court must determine if these well-pleaded factual allegations state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citations omitted); *see also Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009) (stating that the court must "accept as true all of the factual allegations set out in the plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally.")

Plausibility determinations are made by a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Patrick Collins, Inc. v. Doe 1*, 945 F.Supp.2d 367, 372 (E.D.N.Y. 2013) (citations omitted.) A claim is plausible when the factual allegations permit the court to draw the reasonable inference that a party is liable for the misconduct alleged. *See Pension Benefits Guaranty Corp. ex rel. St. Vincent Catholic Medical*, 712 F.3d 705 (2d Cir. 2013).

B.    Standards under FRCP 9(b)

FRCP 9(b) requires that the claim of fraud must be stated with particularity. *See Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001). As noted by the Second Circuit in *O'Brien v. Price Waterhouse*, 936 F.2d 674 (2d Cir. 1991):

> The purpose of Rule 9(b) is threefold -- it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from "improvident charges of wrongdoing," and to protect a defendant against the institution of a strike suit. See Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990); Stern v. Leucadia National Corp., 844 F.2d 997, 1003 (2d Cir.), cert. denied, 488 U.S. 852, 102 L. Ed. 2d 109, 109 S. Ct. 137 (1988); DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987). Thus, although Rule 9(b) permits knowledge to be averred generally, we have repeatedly required plaintiffs "to plead the factual basis which gives

rise to a 'strong inference' of fraudulent intent." <u>Wexner v. First Manhattan Co.</u>, 902 F.2d 169, 172 (2d Cir. 1990); <u>see</u> <u>Devaney v. Chester</u>, 813 F.2d 566, 568 (2d Cir. 1987); <u>Beck v. Manufacturers Hanover Trust Co.</u>, 820 F.2d 46, 50 (2d Cir. 1987), <u>cert. denied</u>, 484 U.S. 1005, 98 L. Ed. 2d 650, 108 S. Ct. 698 (1988). Essentially, while Rule 9(b) permits scienter to be demonstrated by inference, this "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." <u>Wexner</u>, 902 F.2d at 172. An ample factual basis must be supplied to support the charges.

C.    Removing a Trustee for Cause Under
      Section 324 Cannot be Asserted as a Counterclaim

Through the First Counterclaim, the Defendant asserts that the Plaintiff should be removed as trustee of the Defendant's bankruptcy case pursuant to 11 U.S.C. § 324 because this adversary proceeding was commenced in bad faith and in retaliation for Defendant's refusal to pay the Trustee her "$1,500 a month post-petition mortgage payments . . . ." (Ex. C, ¶ 33.)

Putting aside that the First Counterclaim presupposes that the Trustee's objection to the Defendant's discharge lacks merit, the relief being sought - seeking removal of a trustee for cause only after notice and a hearing - (*see* 11 U.S.C. § 324 (Lexis, 2014)), may not be asserted in an adversary proceeding. "[T]he removal of a trustee is not among the matters enumerated in Rule 7001 of the Rules of Bankruptcy Procedure as being within the scope of an adversary proceeding. . . . [T]the proper procedural avenue for [a party] to pursue removal of the trustee is by motion and not by adversary proceeding," *Jefferson v. Mississippi Gulf Coast YMCA, Inc.*, 73 B.R. 179, 182 (Bankr.S.D.Miss. 1986). Consequently, Defendant's First Counterclaim should be dismissed.

Assuming, *arguendo,* that a party may seek to remove a trustee via Counterclaim, Defendant's First Counterclaim should nonetheless be dismissed due to Defendant's failure to allege that she sustained an actual injury.

With respect to claims under Section 324, the Second Circuit has "'traditionally stressed the elements of fraud and actual injury to the debtor interests.'" *In re Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir. 1965) (*quoting Schwartz v. Mills*, 192 F.2d 727, 729 (2d Cir. 1951)). "Furthermore, removal of a trustee is not appropriate where a movant only alleges 'mistakes in judgment where the judgment was discretionary and reasonable under the circumstances.'" *In re Miell*, 2011 Bankr. LEXIS 328, *4 (Bankr.N.D. Iowa Feb. 7, 2011).

As set forth in Point IIF, *infra*, the Defendant has failed to allege a claim for fraud. As discussed in further detail below, an essential element of a claim for fraud is a misrepresentation that induces an allegedly aggrieved party to act.

Assuming that the Trustee's request for post petition payment of the Debtor's disposable income was a misrepresentation, the Defendant did not rely on the Trustee's request or make any payments following the Trustee's request. (*See* Ex. C, ¶ 36 ["The debtor and her counsel explained to the trustee . . . that there would be no payments made post-petition, to the trustee."].) The admission is fatal to any allegation of fraud by the Defendant.

Additionally, the Defendant has not alleged that the Trustee's decision to object to the Debtor's discharge was an unreasonable exercise of discretion or more than a mistake in judgment. Rather, the record indisputably establishes that the Trustee's decision to object to the Defendant's discharge was reasonable and appropriate in light of the Defendant's filing of purposefully manipulated schedules. Because the Defendant has merely alleged that the Trustee's decision to object to her discharge was a mistake in judgment, the First Counterclaim should be dismissed.

Furthermore, a finding that Defendant filed false schedules with the requisite fraudulent intent will render Defendant's claims of retaliation and bad faith moot. Thus, even if

appropriate in this adversary proceeding, at this stage in the litigation, any consideration of Defendant's First Counterclaim seeking to remove the Trustee under Section 324 is premature.

D.  Defendant's Second Counterclaim for
    Interference with a Contract Should be Dismissed

The Defendant's Second Counterclaim, which Defendant labels as "Interference With A Contract," should be dismissed. In sum, the Defendant alleges that the Trustee intentionally and/or negligently interfered with her ability to modify her mortgage loan. (Ex. C, ¶¶ 58-62.) However, the Defendant's allegations do not give rise to a cognizable claim for relief. Significantly, the Second Counterclaim fails to distinguish between tortious interference with an existing contract and prospective business relations.

1.  Tortious Interference with Contract.

Under New York law, to state a claim for intentional interference with a contract, a plaintiff must allege: "the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 82 (1996).

The Defendant alleges "[t]hat as a result of the actions of the trustee, debtor is unable to modify her loan, and is in danger of losing her home." (Ex. C., ¶ 59.) As noted by the Defendant in her Amended Answer, the Defendant was in breach of her existing mortgage at the time that she filed her Petition. (*See* Ex. C, ¶ 54.) There is no allegation that the Trustee caused the Defendant to breach her mortgage.

Further, the Defendant alleges that as a result of the Trustee's actions, she "is unable to modify her loan, and is in danger of losing her home." (*See* Ex. C, ¶ 59.) These

11

allegations demonstrate that there is no existing contract that was breached thereby undermining a claim for tortious interference with contract.

Moreover, Defendant's haphazard, "throw in the kitchen sink" approach to her pleading, undermines her claim for tortious interference. For instance, under the Second Counterclaim, the Defendant alleges that the Trustee "used his position . . . negligently, and in bad faith, to file an adversary proceeding and objection to her discharge . . . ." (Ex. C., ¶ 58.)

However, New York law recognizes intentional interference with an existing contract and interference with prospective business relations as valid causes of action and "treats them as intentional torts." *Nahar v. Gulati,* 2011 N.Y. Misc. LEXIS 722, *4 (Sup.Ct. N.Y. Co., Feb. 25, 2011). Consequently, negligent interference with a contract and negligent interference with prospective business relations are not valid causes of action. *Id. at* *5. Thus, the Second Counterclaim asserting a claim for negligent interference is defective.

Based on the foregoing, the Defendant cannot allege, and has not alleged, a claim for tortious interference with contract.

2. Tortious Interference with Prospective Economic Advantage.

A claim based on "[t]ortious interference with prospective business relations applies to those situations where the third parties would have entered into an extended or contractual relationship with plaintiff but for the wrongful acts of the defendant" and "[i]n such an action the motive for the interference must be solely malicious" *M.J. & K. Co., Inc. v. Matthew Bender & Co., Inc.,* 220 A.D.2d 488, 490, 631 N.Y.S.2d 938, 940 (2d Dep't 1995).

A necessary allegation for the claim for tortious interference with prospective business relations is " . . . that defendant's conduct was motivated solely by malice or to inflict injury by unlawful [wrongful] means, beyond mere self-interest or other economic

considerations." *Shared Communications Servs. of ESR, Inc. v. Goldman Sachs & Co.*, 23 A.D.3d 162, 163, 803 N.Y.S.2d 512, 513 (1st Dep't 2005). "Wrongful means includes physical violence, fraud, misrepresentation, civil suits, criminal prosecutions, and some degree of economic pressure, but more than simple persuasion is required." *Snyder v. Sony Music Entertainment*, 252 A.D.2d 294, 300, 684 N.Y.S.2d 235, 239 (1st Dep't 1999).

It appears that the Defendant is alleging that the wrongful means employed by the Trustee is his commencement of this adversary proceeding. The Defendant contends that the Trustee commenced this adversary proceeding "as a means to punish [the Defendant] for refusing to make post petition payments" and as a result, the Defendant is "unable to modify her loan." (Ex. C, ¶¶ 58, 59.) However, there are no allegations that Wells Fargo granted a mortgage modification to the Defendant, but withdrew such modification because this adversary proceeding was commenced. Further, the Trustee has not prevented the Defendant from pursuing her loan modification while she has been in Chapter 7. The Defendant's self-serving conclusory allegation that she is "unable to modify her loan" fails to provide any particularity concerning this allegation.

Further, notwithstanding the conclusory allegations concerning the Trustee's motive for commencing this discharge action, the Defendant does not allege facts, which would lead one to conclude that the filing of the Complaint impaired the Defendant's ability to modify her mortgage. The Amended Answer asserts no allegations explaining how the Trustee intentionally procured Wells Fargo's breach or how the filing of the Complaint prevented the Defendant from entering into a modification agreement with Well Fargo. The Defendant's allegations that either the Trustee's demand for her disposable income (which the Defendant did not pay) or his commencement of this adversary proceeding in someway prevented the

13

Defendant from modifying her mortgage are purely conclusory and are insufficient to state a claim for relief.

Accordingly, the Defendant's Second Counterclaim should be dismissed.

F.    Defendant's Third Counterclaim for
      Fraud Should be Dismissed

Under New York law, fraud consists of five (5) essential elements. "There must be a representation of fact, which is either untrue and known to be untrue or recklessly made, and which is offered to deceive the other party and to induce them to act upon it, causing injury." *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496 (2d Cir. 1992) (citing *Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 803 (1969)).

The Defendant's fraud claim is lacking because it offers nothing more than unsubstantiated and haphazard allegations. However, even assuming the allegations pleaded by Defendant have any merit, the allegations fail to give rise to an actionable claim under the standards established by FRCP 12(b)(6) and 9(b).

In order to satisfy FRCP 9(b), a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).

Putting aside that Plaintiff denies the Defendant's allegations and contends that the Defendant has not plead all of the required elements, the Defendant has not pled fraud with the particularity required by FRCP 9(b).

The Third Counterclaim references two (2) statements, but it is unclear, which one the Defendant alleges she relied on for her claim for fraud. (*See* Ex. C, ¶¶ 64, 70.) To the extent that the Defendant is relying on statements made by the Trustee, the Defendant fails to

allege that she acted upon any factual misrepresentation made by the Trustee. In fact, the Defendant admits that she did not act upon the Trustee's request. (*See* Ex. C, ¶ 36 ["That debtor and her counsel explained to the trustee . . . that there would be no payments made post-petition, to the trustee."].) (*See also*, Ex. C., ¶ 38.) This admission undermines the Third Counterclaim.

The Defendant also alleges that the Trustee's counsel made a misrepresentation at a "conference" by advising the Court that the Trustee objected to the Defendant's discharge due to her submission of materially false schedules and not her unwillingness to pay the Trustee her post-petition mortgage payments. (*See* Ex. C, ¶¶ 70, 74.) These allegations are absurd. Further, there is absolutely no basis for the Defendant to premise a fraud claim on a so called "misrepresentation" that was made by the Trustee's counsel during a pre-trial conference conducted by this Court after the commencement of this adversary proceeding. *See In re Russell,* 392 B.R. 315, 371 (Bankr.E.D.Tenn. 2008) ["At a pre-trial conference the attorneys and *pro se* parties may argue the alleged facts and the evidence likely to be presented. The court does not accept the alleged facts as true."]

Not only is it illogical for the Defendant to allege that she relied and acted on a statement made by the Trustee's counsel when discussing the complaint's factual allegations with this Court, there are no allegations that permit this Court to make even the slightest inference that any representation made by the Trustee's counsel at the "conference" and later "by letter" (Ex. C, ¶ 70) were made with knowledge of their falsity or with recklessness for the truth.

Moreover, the Third Counterclaim lacks any factual allegations that the Defendant acted on any misrepresentations made by the Trustee or his counsel. As previously

explained herein, the Defendant admits that she did not act on any statements, whether made by the Trustee prior to the conference or made by the Trustee's counsel during the conference.

For the reasons set forth herein, the Defendant's Third Counterclaim should be dismissed.

G.     Defendant's Fourth Counterclaim for
       Abuse of Process Should be Dismissed

A claim for abuse of process has three (3) essential elements, including "1) regularly issued process, either civil or criminal, 2) an intent to do harm without excuse or justification, and 3) use of the process in a perverted manner to obtain a collateral objective... In explaining the first element, the New York Court of Appeals has stated that the process must 'involve an unlawful interference with one's person or property.'" *Kaslof v. Global Health Alternatives, Inc.*, 2000 U.S. Dist. LEXIS 21053, *71 (E.D.N.Y. June 29, 2000).

"The gist of the action for abuse of process lies in the improper use of process after it is issued." *In re Khan*, 488 B.R. 515, 532 (Bankr.E.D.N.Y. 2013) (citations omitted). "An abuse of process claim requires, as its name implies, the misuse or perversion of regularly issued [legal] process to the accomplishment of an improper purpose." *Kalso Systemet, Inc. v. Jacobs*, 474 F. Supp. 666, 670 (S.D.N.Y. 1979).

Defendant alleges that the Trustee misused legal process by commencing this adversary proceeding in retaliation for Defendant's refusal to pay her post-petition mortgage payments to the Trustee. (*See* Ex. C, ¶¶ 78-81.) The Defendant does not allege any improper use of process after the commencement of this adversary proceeding.

Notwithstanding that the Trustee commenced this adversary proceeding due to the Defendant's false schedules, "[t]he filing and service of a summons and complaint, without more, 'is not a sufficient basis for meeting the first element,' because an abuse of process claim

must be rooted in 'the unlawful pursuit of a collateral objective . . . after the process is issued.'"
*Khan*, 488 B.R. at 532-33. Additionally, a "malicious motive alone does not give rise to a cause of action for abuse of process...[because a party] must allege misuse of process after it was issued." *O'Bradovich v. Village of Tuckahoe*, 325 F.Supp.2d 413, 434 (S.D.N.Y. 2004).

Since a claim for abuse of process requires more than the commencement of a lawsuit, the Fourth Counterclaim should be dismissed as a matter of law.

## POINT II

### DEFENDANT'S AFFIRMATIVE
### DEFENSES SHOULD BE STRICKEN

A.    Legal standards under FRCP 12(f)

FRCP 12(f), made applicable to this adversary proceeding by FRBP 7012, provides that a court "may strike from a pleading an insufficient defense...(1) on its own; or (2) on motion made by any party...within 20 days after being served with the pleading. FRCP 12(f) (Lexis, 2014).

A motion to strike "will be granted only if: (1) there is no question of fact that might allow the defense to succeed; (2) there is no substantial question of law, the resolution of which would allow the defense to succeed and (3) plaintiff shows prejudice if the defense is allowed to stand." *Id.*

"To prevail on [a] motion to strike, the movant must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the [movant]." *In re Dixon,* 428 B.R. 911, 916 (Bankr.N.D.Ga. 2010). Here, the Affirmative Defenses have no connection or relationship to the Complaint's factual allegations or the Complaint's claims for relief. Thus, the Affirmative Defenses should be stricken.

1.      The First Affirmative Defense Should be Stricken.

The First Affirmative Defense alleges that "the plaintiff's complaint fails to state a cause of action upon which relief can be granted." (Ex. C., ¶ 16.)  Since Defendant alleges that the Plaintiff has sought to object to her discharge under some sort of retaliatory theory, there cannot be any dispute that the Trustee has sufficiently alleged a claim objecting to the Defendant's discharge.

The party objecting to discharge under section 727(a)(4)(A) must allege that: "(1) the Debtor made a statement under oath, (2) such statement was false, (3) Debtor knew the statement was false, (4) Debtor made the statement with the intent to defraud creditors and (5) the statement related materially to the bankruptcy case." *Dranichak v. Rosetti*, 493 B.R. 370, 377 (N.D.N.Y. 2013).

As demonstrated below, the Trustee has alleged all of the elements required under Section 727(a)(4)(A).

a.      The Defendant made a statement under oath.

The Trustee alleges that Defendant either omitted or significantly underestimated her expenses on her original Schedule J for the purpose of providing Wells Fargo with the false impression that the Defendant possessed monthly disposable income that could be utilized to make monthly mortgage payments following a modification. (Ex. A, ¶¶ 30-38; 47.)  The Defendant's schedules constitute a statement under oath for purposes of Section 727(a)(4)(A).

b.      The Defendant's statement(s) was false.

The Trustee has alleged that by making numerous and substantive changes to her petition evidences that the Defendant intentionally grossly underestimated and omitted numerous

expenses in her Schedules. As alleged by the Trustee, the Debtor grossly understated or entirely omitted expenses including her:

    (1)    electricity and heating fuel expense, which was increased by 272%, from $200.00 to $774.00;

    (2)    water and sewer expense, which was increased by 140%, from $25.00 to $60.00;

    (3)    telephone expense, which was increased by 555%, from $37.00 to $242.26;

    (4)    cable, internet, home phone expense, which was increased from $0.00 to $140.00;

    (5)    food expense, which was increased by 67%, from $300.00 to $500.00;

    (6)    transportation expense, which was increased by 100%, from $100.00 to $200.00;

    (7)    homeowner's insurance expense, which was increased from $0.00 to $225.00; and

    (8)    landscaper expense, which was increased from $0.00 to $70.00. (*See* Ex. A, ¶ 38.)

The Trustee has alleged that the Defendant's initial Schedule J was false, especially since the Defendant was provided with an opportunity to note any corrections to her petition at the commencement of the 341 Meeting, but declined to do so. (*See* Ex. A, ¶ 10 ["After being sworn in at the 341 Meeting, the Defendant informed the Trustee that her signature appeared on the bankruptcy petition and that her petition and schedules required no corrections or changes."].) The Trustee has sufficiently alleged this element of the claim.

    c.    The Defendant knew the statement(s) was false.

Although the Trustee need not address credibility at this juncture of the pleading stage, it is incredible for the Defendant to deny that she did not manipulate all or some of her expenses, especially since she did not list any expenses for cable, internet, home phone; homeowner's insurance and/or landscaping expenses and increased several expenses by more

19

than 100%. *(See* Ex. A, ¶¶ 16-18, 38.) The Debtor attempted to pull a fast one on this Court by supplying information that was false or she should have known to be false. The Trustee has duly alleged this element of the claim.

                d.      The Defendant made the statement(s) with fraudulent intent.

The Trustee has alleged allegations that the Defendant deliberately manipulated her expenses in Schedule J for the purpose of showing disposable income that could be utilized to make modified mortgage payments. *(See* Ex. A, ¶¶ 30-34.) [The Trustee has alleged, upon information and belief, in order for Wells Fargo to consider a modification of the mortgage, the Defendant was "required to demonstrate that she possesses monthly disposable income in the sum of $1,500.00 to $1,800.00, which could be utilized to make reduced and/or modified mortgage payments . . . [and that] the Defendant did not accurately list and/or include all her monthly expenses on her Original Schedule J because inclusion of all expenses would have resulted in a monthly income deficit . . . for the specific purpose of showing a positive net income between $1,500.00 and $1,800.00 . . . [because] a Schedule J monthly income deficit would prevent the Defendant from being considered for a mortgage modification. "] The Trustee has pleaded this element of the claim.

                e.      The Defendant's statement(s) related materially to the bankruptcy case.

The Trustee has alleged that the Defendant's omissions and errors are material to her bankruptcy case. Clearly, the Defendant's failure to include or understate as many as 10 expenses "bears a relationship to the Defendant's business transactions [and/or] estate." *See In re Sapru*, 127 B.R. 306, 315 (Bankr.E.D.N.Y. 1991).

Based on the foregoing, the Plaintiff has sufficiently alleged a claim objecting to the Defendant's discharge under Section 727(a)(4)(A). Accordingly, the First Affirmative Defense should be stricken.

2.     The Second Affirmative Defense Should be Stricken.

The Defendant's Second Affirmative Defense alleges that the "bankruptcy trustee is exceeding his authority and proceeding in an unreasonable manner." (Ex. C, ¶ 20.) The Bankruptcy Code explicitly provides a trustee with the authority to object to a debtor's discharge. *See* 11 U.S.C. § 704(a)(6). Consequently, because the Code authorizes the Trustee to commence this adversary proceeding, the Second Affirmative Defense cannot be sustained under any circumstances as a matter of law.

3.     The Third and Fourth Affirmative Defenses Should be Stricken.

FRCP 8(c)(1) provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: accord and satisfaction; arbitration and award; assumption of risk; contributory negligence; duress; estoppel; failure of consideration; fraud; illegality; injury by fellow servant; laches; license; payment; release; res judicata; statute of frauds; statute of limitations; and waiver." (Lexis, 2014.) Neither the Third Affirmative Defense nor the Fourth Affirmative Defense fall within any of these enumerated defenses.

The Third Affirmative Defense alleges that the "trustee is not entitled to post petition mortgage payments" and the Fourth Affirmative Defense claims that the "trustee lacks standing to demand payment of post petition mortgage payments." (Ex. C, ¶¶ 23, 25.) Putting aside that the Trustee never demanded "post petition mortgage payments" from the Debtor, these affirmative defenses are lacking and inapplicable to this proceeding.

Additionally, affirmative defenses "deny plaintiff's right to recover, even if the allegations of the complaint are true." *Federal Deposit Insurance Corp. v. Main Hurdman*, 655 F.Supp. 259, 262 (E.D.Cal. 1987).

21

Further, "[a]n affirmative defense, under the meaning of Federal Rule of Civil Procedure 8(c), is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven." *Roberge v. Hannah Marine Corp.*, 1997 U.S. App. LEXIS 21655, at *7 (6th Cir. August 13, 1997); 124 F.3d 199, 1997 U.S. App. LEXIS 30706.

Furthermore, the decision in *In re Black*, 95 B.R. 819 (Bankr.M.D.Fla. 1989) is instructive. The *Black* court was faced with numerous affirmative defenses that were clearly lacking. In addressing the sufficiency of the affirmative defenses, the court noted that:

> [t]he third remaining so-called affirmative defense is based on the proposition that the [Federal Trade] Commission did not issue a cease and desist order before it filed its suit in the federal District Court; that the Complaint filed in the District Court by the [Federal Trade] Commission does not allege a failure by the [d]efendants to comply with such cease and desist order. This obviously has nothing to do with any controversy relating to dischargability of debts allegedly owed by these [d]ebtors, therefore, it is clearly not an affirmative defense and should be stricken. *Id.* at 825.

Similarly, the Third and Fourth Affirmative Defenses have "nothing to do with any controversy relating to dischargability of debts allegedly owed by the" Defendant. (*Id.*) Indeed, neither of these affirmative defenses provide any basis to excuse the Defendant's filing of false schedules and have no bearing on whether the Plaintiff will be able to establish the elements of his claim under section 704(a)(4)(A). Further, the Third and Fourth Affirmative Defenses are unnecessary because they duplicate the Defendant's denials. *See Roberge, supra.*

Thus, the Third and Fourth Affirmative Defenses should be stricken.

## CONCLUSION

For the reasons set forth herein, the Plaintiff-Trustee respectfully requests that this

Honorable Court grant the motion in its entirety and such other and further relief as this Court

deems just and proper.

Dated: Garden City, New York
March 27, 2014

                          Weinberg, Gross & Pergament LLP
                          Attorneys for Plaintiff-Trustee

By:    _____
                Marc A. Pergament
                400 Garden City Plaza, Suite 403
                Garden City, New York 11530
                (516) 877-2424